UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREDERICK AND DANA LEEDS, SVEN
AND ELIZABETH BEAUCHMIN,
KISHOR AND HEMA KANNAN
GANDHI, and MICHAEL AND SIMONA
FABIANO, on behalf of themselves and all
others similarly situated,

*Plaintiffs,*

v.

IKO MANUFACTURING, INC., IKO
INDUSTRIES LTD., IKO MIDWEST INC.,
IKO INDUSTRIES, INC. And IKO
PRODUCTION, INC.
*Defendants.*

Case No.

**17   0339**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs Frederick and Dana Leeds, Sven and Elizabeth Beauchmin, Kishor and Hema

Kannan Gandhi, and Michael and Simona Fabiano, by their undersigned counsel, respectfully file

this Class Action Complaint ("Complaint") against Defendants, IKO Manufacturing, Inc., IKO

Industries, Ltd., IKO Midwest Inc., IKO Industries, Inc. and IKO Production, Inc. (collectively

"IKO" or "Defendants"), stating as follows:

### NATURE OF THE CASE

1.     This is a product liability class action asserting claims in connection with defective

roofing shingles that were designed, manufactured, marketed, advertised and sold by IKO under

the "Cambridge AR" product name (the "Shingles").

2.     At all times material hereto, IKO represented and warranted the Shingles to be

durable, reliable, free from manufacturing defects, and compliant with the American Society for

Testing and Materials ("ASTM") and other industry standards applicable to roofing shingles for use on the homes, residences, buildings, and other structures of Plaintiffs and Class Members.

3.     In particular, IKO specifically warranted and represented that the Shingles conformed to, and had been designed and/or manufactured to meet or exceed, applicable industry standards.

4.     However, the Shingles do not conform to IKO's warranties and representations. At the time of sale, the Shingles contain a manufacturing defect which causes the following conditions: premature blistering in the base layer and top layers of the shingles; premature tearing in the base layer of the Shingles; premature cracking in the base layer and top layer of the Shingles; premature delamination of the top layer of the Shingles, early granule loss and degradation of the Shingles, loss of adhesion at the seal strip between adjacent shingles, and otherwise do not perform as expressly warranted and represented.

5.     The defects in the Shingles result in air and water infiltration, which damages the building components of the structures on which they were installed and damages the property within those structures.

6.     Even after learning of these defects, IKO continued to market and sell the Shingles to the public and to make the above-described false representations and warranties in connection with those sales despite knowing the defects would cause consumers to incur significant property damage and economic loss.

7.     This class action seeks damages, injunctive relief, costs, attorneys' fees, and other relief on behalf of the Plaintiffs and all members of the Class defined below.

2

## THE PARTIES

8.     Plaintiffs, Frederick and Dana Leeds, h/w, are adult individuals who own and reside in a single-family home located at 2215 Graystone Lane, Newtown, Bucks County, Pennsylvania. Plaintiffs purchased their home from Orleans at Brookshire Estates, LP ("Orleans") in December 2012, and are the original owners.  This home was newly constructed during 2012 by Orleans, which purchased and installed IKO "Cambridge" roofing Shingles that are the subject of this action.  Approximately eleven months after their purchase, Plaintiffs experienced leaks in an upstairs bedroom and the upstairs bathroom and hallway.  Plaintiffs reported the leaks to the builder, Orleans, which provided warranty service and sent a roofer to repair the Shingles. Plaintiffs were also required to hire a contractor to repair the damages to the home's interior as a result of the leaks.  Plaintiffs believed that these repairs had remedied any problems with their roof.  In 2016, Plaintiffs began to notice that the Shingles were failing to adhere to the structure, and are blistering, tearing, cracking, separating, losing granules and deteriorating.  Plaintiffs' experiences with the loss of Shingles from their roof are typical of other consumers and members of the Class.

9.     Plaintiffs, Sven and Elizabeth Beauchmin, h/w, are adult individuals who own and reside in a single-family home located at 2175 Graystone Lane, Newtown, Bucks County, Pennsylvania.  Plaintiffs purchased their home from Orleans in May 2013 and are the original owners.  This home was newly constructed by Orleans, which purchased and installed IKO "Cambridge" Roofing Shingles that are the subject of this action. Almost immediately after their purchase, Plaintiffs began to notice Shingles blowing off of their home's roof.   Plaintiffs immediately notified the home's builder, Orleans, which sent a contractor to perform repairs.  The repairs included replacing lost Shingles, hand sealing the entire roof and replacing the entire starter

3

course of Shingles along the roof's edge. Plaintiffs believed the repairs made by Orleans had remedied any problems with their roof. In 2016, Plaintiffs began to notice that the Shingles were failing to adhere to the structure, and were exhibiting blistering, tearing, cracking, separation, loss of granules, and deterioration. Plaintiffs' experiences with the failure and loss of Shingles from their roof are typical of other consumers and members of the Class.

10.    Plaintiffs, Kishor and Hema Kannan Gandhi, h/w, are adult individuals who own and reside in a single-family home located at 1750 Tristen Drive, Newtown, Bucks County, Pennsylvania. Plaintiffs purchased their home from Orleans in September 2011 and are the original owners. This home was newly constructed by Orleans, which purchased and installed the IKO "Cambridge" Roofing Shingles that are the subject of this action. During 2013, Plaintiffs began to notice Shingles blowing off of the home's roof causing severe leaks in the home's interior walls and upstairs bedroom. Plaintiffs immediately notified the home's builder, Orleans, which sent a contractor to perform multiple repairs during 2013, 2015 and 2016. The repairs included replacing lost Shingles, and partially replacing the Shingles. During April 2016, Plaintiffs notified IKO directly concerning the defective shingles. IKO sent a representative to inspect the roof who reported there was nothing wrong with the Shingles. Since that time, Plaintiffs' Shingles have continued to fail to adhere, blister, tear, crack, separate, lose granules and deteriorate. Plaintiffs have expended approximately $4,900.00 to hire the contractors performing the repairs. Plaintiffs' experiences with the failure and loss of Shingles from the roof are typical of other consumers and members of the Class.

11.    Plaintiffs, Michael and Simona Fabiano, h/w, are adult individuals who own and reside in a single-family home at 1748 Tristen Drive, Newtown, Bucks County, Pennsylvania. Plaintiffs purchased their home from Orleans in November 2012 and are the original owners. This

4

home was newly constructed by Orleans, which purchased and installed IKO "Cambridge" Roofing Shingles that are the subject of this action. In approximately February 2013, Plaintiffs began to notice Shingles blowing off of the home's roof causing interior leaks in the home's master bath. Plaintiffs immediately notified the home's builder, Orleans, which sent a contractor to perform repairs. The repairs included replacing lost Shingles and hand sealing the entire roof. Plaintiffs have had repairs to the Shingles performed on approximately five different occasions, each time believing the problems with the roof had been remedied. Subsequently, Plaintiffs reported the Shingles' failures to IKO directly. IKO sent a representative to inspect the roof who removed samples of Shingles from the roof and sent a contractor to hand seal the roof. Since that time, Plaintiffs' Shingles have continued to fail to adhere, blister, tear, crack, separate, lose granules and deteriorate. Plaintiffs have expended approximately $600.00 on the contractors performing the repairs. Plaintiffs' experiences with the failure and loss of Shingles from the roof are typical of other consumers and members of the Class.

12.     Defendant IKO Industries, Inc. describes itself as a worldwide enterprise with more than 3,500 employees and more than 25 manufacturing plants in the United States, Canada, England, Belgium, Holland, France and Slovakia. IKO maintains its U.S. corporate headquarters in this District at 120 Hay Road, Wilmington, Delaware 19089.

13.     Defendant IKO Manufacturing Inc. is a Delaware corporation with its primary place of business located at 235 West South Tec Drive Kankakee, Illinois, 60901 where it manufactures, sells, markets and services IKO Shingles.

14.     Defendant IKO Industries Ltd. is a Canadian corporation and is the parent corporation of IKO Manufacturing, Inc.

5

15.     Defendant IKO Midwest, Inc. is a Delaware corporation with its principal place of business located at 235 West South Tec Drive, Kankakee, Illinois 60901.

16.     Defendant IKO Production, Inc. is a Delaware corporation with extensive business operations emanating from 120 Hay Road, Wilmington, Delaware 19809 where it manufactures, distributes, and/or sells the Shingles.

## JURISDICTION & VENUE

17.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and there are one hundred or more members of the proposed Class.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a).  IKO resides in and/or has engaged in business in this judicial District and a substantial part of the events giving rise to the claims at issue took place in this District.

## FACTUAL ALLEGATIONS

19.     The Shingles that are the subject of this action were sold under the product name "Cambridge AR," AR indicating algae-growth resistance.  IKO's Cambridge AR Shingles were laminated shingles made of asphalt and fiberglass, with a granule surface embedded into a filled asphalt coating.  Initially, the Shingles were manufactured with an adhesive strip on the back side of the shingle near the drip line, so that the top Shingle could adhere to the Shingle below it.

20.     IKO has sold, directly or indirectly through dealers and retail outlets, millions of Shingles nationwide and in the Commonwealth of Pennsylvania.

21.     In connection with these sales, both before and at the time of purchase, IKO made various representation and warranties via its:

        a.     written warranty;

6

      b.      sales brochures;

      c.      store displays;

      d.      sales seminars;

      e.      training materials;

      f.      on the packaging of the Shingles; and,

      g.      other marketing materials.

22.     These representations and warranties promised the Shingles:

      a.      were free from manufacturing defects;

      b.      conformed to all applicable industry standards and building codes; and,

      c.      would last for thirty years without problems or IKO would remedy the

problem.

23.     IKO also provided a five-year "Iron Clad Protection Period" stating:

If, during the Iron Clad Protection Period, Shingles that have been installed in strict accordance with the instructions printed on the wrapper have been determined to have manufacturing defects which have directly caused leaks, IKO will have the shingles repaired or replaced free of charge (exclusive for costs of tear-off of the shingles, disposal, flashing and metal work). This is IKO's Maximum Liability during the Iron Clad Protection Period.

24.     IKO's warranty further provided that beyond the Iron Clad Protection Period, and for a period of up to 30 years, Shingles that are determined to have manufacturing defects that have directly caused leaks, IKO's liability is limited to a prorated amount of the current value of the shingles only.

25.     In addition, IKO provided a 5-year limited wind resistance warranty up to a dollar amount per square set forth on the Shingle's wrapper.

26.     These representations and warranties became a basis of the bargain when Plaintiff and Class Members purchased the Shingles.

27.     Plaintiff and Class Members would not have purchased the Shingles, or the homes on which the Shingles were installed, or would have paid less for their homes had they known the Shingles did not meet applicable industry standards and building code requirements.

28.     And, in fact, the Shingles are not free from defects and do not meet the applicable industry standards.  As a result of a design or manufacturing defect, the Shingles have inadequate tear strength, thus subjecting the Shingles to cracking failure, blistering and granule loss.  See Photographs depicting defects below.



Photo 1 depicting cracked Shingles.



Photo 2 depicting granule loss from Shingles.

8



Photo 3 depicting missing, broken Shingles.



Photo 4 depicting delamination in Shingles.

29.     Average temperatures in Pennsylvania routinely fall below 40 degrees for 3 to 6 months of the year.  Plaintiffs' expert concluded that the Shingles become excessively brittle and loose pliability at temperatures below 40 degrees causing the Shingles to exhibit cracking when handled (installed), or subject to bending (e.g., wind lift).

30.     Defendant knowingly sells the Shingles in areas of the country, including Pennsylvania, where the average temperatures routinely fall below 40 degrees during the year.

9

31.     This cracking, blistering, and premature deterioration of the Shingles results in decreased wind resistance of the Shingles and moisture penetration into the underlying building components and interiors.

32.     Moisture penetration into the underlying building components and interiors causes additional damage to the Shingles, damage to the underlying building components, and damage to the other property of Plaintiffs and Class Members.

33.     Due to these defects, the Shingles do not conform to IKO's representations.

34.     Since the time of installation of the Plaintiffs' Shingles, the Shingles have blistered, cracked, torn, detached, and blown-off, resulting in several roof leaks.

35.     Plaintiffs Kishor and Hema Kannan Gandhi, and Michael and Simona Fabiano have submitted warranty claims to IKO, but IKO has failed and refused to adequately respond to Plaintiffs' claims by asserting that the problems were not caused by a manufacturing defect in the Shingles.

36.     Upon information and belief, IKO has received many warranty claims alleging the same design and/or manufacturing defect that is the subject of this class action throughout the Commonwealth of Pennsylvania and the United States.

37.     Upon information and belief, IKO has improperly rejected these warranty claims.

38.     Despite receiving numerous complaints and warranty claims regarding the defects, IKO has refused to convey effective notice to consumers regarding the defects and premature deterioration of the Shingles.

39.     Instead, IKO continued to manufacture and sell the Shingles with actual or willful and wanton disregard for the falsity of its warranties and representations regarding the Shingles.

40.      IKO's continued shipping and sales of the Shingles with prior knowledge of, or willful and wanton disregard for, the defects constitutes a breach of its express warranty and renders limitations of liability contained within its express warranty unconscionable in all respects and, therefore, void.

41.      IKO's response to its customers' warranty submissions and other reasonable requests for assistance and compensation is insufficient and misleading in that IKO claims, without justification, that there is nothing wrong with the Shingles.

42.      However, it is telling that newer versions of the Shingles were manufactured with an additional adhesive strip added to the bottom layer of the Shingles. Prior versions, including the Shingles installed on the Plaintiffs' houses, contained only one adhesive lawyer. IKO made this manufacturing change presumably in response to reports of Shingles being torn-off in the wind.

43.      As a result of the defects and failures alleged herein and IKO's failure to properly and adequately respond to warranty claims, Plaintiffs and Class Members have suffered actual damages to their real and personal property and incurred, and will incur, costs for the correction or replacement of the Shingles.

44.      Plaintiffs seek to recover for themselves and the Class the costs of repairing the damage to their property and replacing the Shingles, as well as injunctive relief requiring IKO to replace the Shingles and modify the warranty claims process to uniformly provide protection in accordance with its obligations under the law.

## CLASS ACTION ALLEGATIONS

45.      Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated as Class Members pursuant to FED. R. CIV. P. 23.

11

46.    Plaintiffs seek to represent a Pennsylvania Class defined as follows:

## DAMAGES CLASS:

All persons and entities owning homes, residences, buildings, or other structures physically located in the Commonwealth of Pennsylvania on which (a) the Shingles are currently installed; or (b) were previously installed and have been replaced by owners due to the defect.

## DECLARATORY RELIEF CLASS

All natural persons and entities that own a structure located within the Commonwealth of Pennsylvania in which the Shingles are currently installed, but who have not already been compensated in full for their losses by IKO.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) IKO and any entity in which IKO has a controlling interest or which has a controlling interest in IKO and its legal representatives, assigns and successors of IKO; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

47.    *Numerosity*:    The Classes are composed of thousands of persons geographically dispersed throughout the Commonwealth of Pennsylvania, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from IKO's records or identifying marks on the Shingles.

48.    *Commonality*: Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual issues include, but are not limited to the following:

a.    Whether the Shingles are defective in design, manufacture or both;

b.    Whether the Shingles when sold were not merchantable and reasonably suited to the use intended;

c.    Whether the Shingles have damaged other personal property within

12

Plaintiffs' and Class Members' homes;

d.      Whether the Shingles have damaged the habitable living space in Plaintiffs' and/or Class Members' homes;

e.      Whether IKO breached its express warranty that its products would be free from defects in materials and workmanship;

f.      Whether IKO's replacement Shingles also contain the same defect;

g.      Whether the Shingles conform to IKO's express representations and warranties including compliance with the applicable building codes, applicable ASTM standards, and/or applicable UL standards that formed the basis of the bargain for Plaintiff and Class Members;

h.      Whether IKO knew or became aware that its Shingles were defective, yet continued to manufacture, distribute and sell the Shingles without: (1) informing customers, purchasers, builders and/or homeowners of the defects; (2) recalling the defective Shingles; (3) correcting the manufacture or design defects; or (4) otherwise repairing the defective Shingles that had already been purchased; and, instead engaged in a practice of concealment, suppression or omission of the material defects;

i.      Whether IKO's expertise and superiority gave rise to a duty to disclose the material facts which were concealed;

j.      Whether IKO improperly designed or manufactured the Shingles;

k.      Whether the defective Shingles caused damages to Plaintiffs and other members of the Class;

l.      Whether IKO concealed the defective nature of the Shingles from Plaintiffs,

13

Plaintiffs' builders, Class Members, Class Members' Builders and/or the general public;

m.      Whether Plaintiffs and Class members are entitled to compensatory damages, including, but not limited to: (i) the cost of purchasing and installing replacement Shingles; (ii) compensation for all out-of-pocket monies expended in seeking and/or obtaining replacement Shingles from IKO; (iii) the difference in the value of the Shingles as warranted and the Shingles containing the defect; (iv) the cost of repair/replacement of Class members' other property damaged as a result of the defective Shingles; and (v) the diminution of resale value of the structures containing the Shingles resulting from the defect.

n.      Whether Plaintiffs and the Declaratory Relief Class members are entitled to replacement of their defective Shingles with non-defective Shingles; and

o.      Whether Plaintiffs and the Class are entitled to restitution or disgorgement.

49.     *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the Classes, as all such claims arise out of IKO's conduct in designing, manufacturing, warranting and selling the Shingles and Plaintiffs and Class Members' purchasing homes with the defective Shingles.

50.     *Adequate Representation*:  Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have no interests antagonistic to those of the Classes.  Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

51.     *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Classes predominate over

14

questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable.  Should individual Class Members be required to bring separate actions, this Court and courts throughout Pennsylvania would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I - BREACH OF EXPRESS WARRANTY

52.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

53.     IKO entered into contracts with retailers, suppliers and/or contractors to sell the Shingles installed at Plaintiffs' and the Class Members' properties.

54.     Plaintiffs and the Class Members are intended third-party beneficiaries of those contracts because it was the clear and manifest intent of IKO that the contracts were to primarily and directly benefit Plaintiffs and the Class Members.

55.     IKO expressly represented and warranted that the Shingles were appropriate for their intended use and were free from defects.

56.     IKO expressly represented that its warranties extended to the initial homeowner whose home contains the Shingles.

57.     IKO also expressly represented that the Shingles conform to all applicable industry standards.

15

58.     These representations, described herein, became part of the basis of the bargain when Plaintiffs, Plaintiffs' Builders, Class Members and/or Class Members' builders purchased the Shingles and/or purchased the homes containing the Shingles.

59.     Plaintiffs Kishor and Hema Kannan Gandhi, and Michael and Simona Fabiano gave notice of the defects when they filed warranty claims with IKO, but IKO has failed to correct the defects.

60.     The Shingles are defective because they caused and continue to cause damage to the roofs and underlying structures belonging to Plaintiffs and the Class Members.

61.     In addition, the Shingles fail to conform to all applicable codes and standards as expressly warranted and represented by IKO.

62.     As a result of IKO's breach of the express warranty, Plaintiffs and the Class members have suffered and continue to suffer actual and consequential damages.

## COUNT II – BREACH OF IMPLIED WARRANTIES

63.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

64.     Because IKO extended an express warranty for the Shingles to Plaintiffs and the Class, privity of contract exists between IKO and Plaintiffs and the Class.

65.     IKO is a designer, manufacturer and supplier of the Shingles and for a number of years, marketed, warranted, distributed, and/or sold the Shingles in Pennsylvania.

66.     IKO manufactured and sold its Shingles to Plaintiffs and the Class members, and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for its intended use.

16

67.     However, the Shingles were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Shingles described herein.

68.     The numerous and serious defects described herein made the Shingles unfit and inappropriate for its intended use as a covering for building exteriors.

69.     The Shingles are also unfit for their particular purpose. IKO manufactured and marketed its Shingles for climates with multiple seasons, including cold temperatures of 40 degrees or less, and for other ordinary conditions such as wind. IKO knew, or should have known, that its Shingles would be subjected to varying temperatures and weather conditions, including cold temperatures and wind, throughout each year. Due to the low tear strength and lack of pliability at temperatures of 40 degrees or below, the Shingles blister, crack, separate, tear-off, and exhibit granule loss, and are unfit for their particular purpose.

70.     Even after Plaintiffs became aware of the problems and gave proper notice to IKO, IKO failed to provide an adequate remedy.

71.     As a result, IKO breached its implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

72.     Plaintiffs and the Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

73.     As a direct and proximate result of IKO's breach of the implied warranties, Plaintiffs and Class Members have suffered actual and consequential damages.

## COUNT III - VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL")

74.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

17

75.     73 Pa. Cons. Stat. § 201-1 *et seq.* makes unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

76.     IKO is a manufacturer, marketer, seller, and distributor of the Shingles.

77.     Plaintiffs purchased the Shingles primarily for personal, household or family use.

78.     Defendant recklessly, wantonly and willfully violated the provisions of the UTPCPL by the conduct described above and throughout this Complaint.

79.     Defendant made, published, disseminated, circulated, and/or placed before the public, and/or caused to be made, published, disseminated, circulated, or placed before the public, advertisements, announcements, statements, and representations relating to the purchase, sale and use of the Shingles that contained assertions, representations and statements of fact concerning the qualities and characteristics of the Shingles.

80.     IKO made false, deceptive and misleading statements and representations to Plaintiffs and members of the Class with the intent of selling and increasing the consumption of the Shingles, including false, deceptive and misleading statements concerning the quality, uses, characteristics, and benefits of the Shingles. IKO knew or should have known that the Shingles did not meet the ATSM standards contained in the packaging and product literature.

81.     Defendant's aforementioned assertions, representations and statements of fact concerning the qualities and characteristics of the Shingles were untrue, deceptive and misleading, in violation of the UPTCPL, as described throughout this Complaint.

82.     IKO also made the deceptive and misleading omissions concerning the Shingles, as it failed to tell Plaintiffs and Class members that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and were otherwise not as warranted and represented by IKO.

18

83. Defendant also violated the UTPCPL by failing to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after the contract for the purchase of the goods or services was made. Specifically, the defects in the Shingles described herein are defects about which Defendant is aware but does not remedy.

84. IKO also engaged in false, deceptive and misleading acts when it failed to honor its express warranty to all owners of homes with its defective Shingles.

85. Moreover, IKO improperly provided an express warranty that the Shingles would be free from defects in materials and workmanship, which it did not honor, despite knowing that the Shingles contained the defects.

86. Defendant has engaged in unfair and deceptive acts pursuant to the UTPCPL by attempting to limit the warranties on the Shingles while actively concealing this fact from purchasers.

87. The above-referenced misrepresentations, omissions and active concealment concerning the defects in the Shingles were material to the transaction. The misrepresentations and omissions were made with the intent that Plaintiffs and the Classes rely upon them, thereby preserving the sale of the Shingles and allowing Defendant to profit from the sales. Otherwise, without the false representations, breaches of warranty and material omissions, IKO would not have been able to sell the Shingles, or would have been forced to sell them at a substantial discount.

88. Plaintiffs and the Class members did not know that the Shingles were defective and would fail prematurely. Had they known of the defects in the Shingles, they would not have purchased the Shingles or would have negotiated additional coverage. The fact that the Shingles prematurely fail is a material fact that any reasonable customer would have considered important in deciding whether to purchase the Shingles or a home that included the Shingles.

19

89.     IKO's violations of the UPTCPL are continuing, with no indication that IKO will cease.

90.     Because of these unfair and deceptive practices, IKO has been unjustly enriched.

91.     Under all of these circumstances, IKO's conduct in employing these unfair and deceptive trade practices was and is malicious willful, wanton and outrageous, such as to shock the conscience of the community and warrant the imposition of punitive damages.

92.     IKO's actions impact the public interest because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others who own the Shingles as a result of and pursuant to IKO's generalized course of deception.

93.     IKO's false, deceptive and misleading statements caused Plaintiffs and the Class members to be deceived and to sustain pecuniary damages, including, but not limited to, the amounts paid for the Shingles, the costs incurred to repair or replace the Shingles, the loss in value of their properties, and damage to their property due to the defects in the Shingles.

94.     As a direct and proximate result of IKO's violation of the UTPCPL, Plaintiffs and the Class members have suffered and will continue to suffer ascertainable loss and damages and are entitled to all appropriate relief, including, but not limited to, damages, costs, and attorneys' fees.

## COUNT IV - FRAUDULENT CONCEALMENT

95.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

96.     At all times mentioned herein, IKO, through its experience, was in a position of superiority to Plaintiffs and the Class Members and as such had a duty and obligation to disclose to Plaintiffs the true facts and their knowledge concerning the Shingles; that is that said product

20

was defective, would prematurely fail, and otherwise were not as warranted by IKO. IKO made the affirmative representations as set forth in this Complaint to Plaintiffs, the Class, and the general public prior to the dates Plaintiffs purchased the Shingles, while at the same time concealing the material defects described herein. All of these facts were material to consumers' (such as Plaintiffs) purchase decisions.

97.     The material facts concealed or not disclosed by IKO are those which a reasonable person would have considered to be important in deciding whether to purchase Shingles.

98.     At all times mentioned herein, IKO intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs and with the intent to defraud as herein alleged.

99.     At all times mentioned herein, IKO misrepresented that its Shingles met the applicable industry standards.     Further, when it denied Plaintiffs' warranty claims, IKO misrepresented that there was no problem with the Shingles.

100.    At all times mentioned herein, Plaintiffs and members of the Class reasonably relied on IKO to disclose to them those material facts set forth above. If IKO had disclosed the above facts to Plaintiffs and Class and they had been aware of said facts, they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the defects or simply avoided the risk all together by purchasing different shingles from one of IKO's competitors.

101.    IKO continued to conceal the defective nature of its Shingles even after members of the Class began to report problems. Indeed, IKO continues to cover up and conceal the true nature of the problem. Based on information and belief, IKO has received numerous warranty claims concerning the Shingles.

102.    As a result of the previous and continued concealment or suppression of the facts

21

set forth above, Plaintiffs and the Class members sustained damages in an amount to be determined at trial.

**COUNT V – DECLARATORY RELIEF**

103.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

104.    Defendant has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that equitable relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of FED. R. CIV. P. 23.

105.    Plaintiffs seek rulings on the following issues each of which is ripe for adjudication, is not moot, and will resolve an important matter at issue in the litigation that would ultimately be redressable:

a.    That the Shingles have a defect which results in premature failure;

b.    That the defect in the Shingles is a result of a defect in the design or manufacturing process;

c.    That the Shingles were not manufactured consistent with applicable building codes;

d.    That Defendant's warranty fails of its essential purpose because (a) Defendant has refused to honor the warranty and (b) the warranty merely calls for replacing one defective product with a product bearing the identical manufacturing defect;

e.    Defendant's warranty as a whole is void as unconscionable, both procedurally and substantively as it is a contract of adhesion that provides limited relief to members of the class even if the warranty obligations are acknowledged;

22

f.      Defendant's warranty disclaimers are void as unconscionable both procedurally and substantively because they seek to exculpate Defendant from knowingly selling a defective product;

g.      Defendant's limitation of the warranty which excludes cost of labor for tear-offs is unconscionable both procedurally and substantively because the main cost of defective shingles is in the labor to remove the old shingles and install new ones;

h.      A declaration that Defendant breached its duty to notify owners of the defect, and a declaration requiring Defendant to make such disclosure and notification

i.      A declaration that Defendant's concealment of the defect has equitably tolled any statute of limitations and that Defendant is estopped from asserting a statute of limitations defense by virtue of its inequitable conduct;

j.      A declaration that Defendant's response to warranty claims has been in breach of the warranty, and a declaration requiring Defendant to reassess all prior warranty claims and to pay the full costs of repairs and damages; and

k.      A declaration that Defendant must replace defective Shingles with shingles that are free of defects and are cosmetically similar, and that replacement of the Shingles with other identical Shingles would be unconscionable and would cause the warranty to fail in its essential purpose.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant IKO as follows:

a.      For an order certifying the Classes, pursuant to FED. R. CIV. P. 23,

23

appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

b.     For compensatory damages sustained by Plaintiffs and the damages Class;

c.     For equitable relief pursuant to the request for Declaratory Relief;

d.     For an order voiding all unconscionable clauses from IKO's express warranty;

e.     For payment of costs of suit herein incurred;

f.     For both pre-judgment and post-judgment interest on any amounts awarded;

g.     For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and,

h.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated:                                    Respectfully submitted,

**EDELSON & ASSOCIATES, LLC**

BY:_____

MARC H. EDELSON (PA 51834)
LIBERATO P. VERDERAME (PA 80279)
3 Terry Drive, Suite 205
Newtown, PA 18940
Tel: (215) 867-2399
Fax: (267) 685-0676
medelson@edelson-law.com
lverderame@edelson-law.com

PAUL J. SCARLATO (PA 47155)
BRIAN D. PENNY
**GOLDMAN SCARLATO & PENNY, P.C.**
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Tel: (484) 342-0700
Fax: (484) 580-8747
scarlato@lawgsp.com
penny@lawgsp.com

JONATHAN SHUB
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Phone: 215 238-1700
Fax: 215 238-1968
jshub@kohnswift.com

*Counsel for Plaintiffs*

25

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

17-CV-0339

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

17 0339

## I. (a) PLAINTIFFS
Frederick and Dana Leeds, Sven and Elizabeth Beauchmin, Kishor & Hema Kannan Gandhi, and Michael and Simona Fabiano

**DEFENDANTS**
IKO Manufacturing, Inc., IKO Industries, Ltd., IKO Midwest, Inc., IKO Industries, Inc. and IKO Production, Inc.

(b) County of Residence of First Listed Plaintiff    **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    **New Castle County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
EDELSON & Associates
3 Terry Drive, Suite 205, Newtown, PA 18940
215-867-2399

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ❏ 110 Insurance
- ❏ 120 Marine
- ❏ 130 Miller Act
- ❏ 140 Negotiable Instrument
- ❏ 150 Recovery of Overpayment & Enforcement of Judgment
- ❏ 151 Medicare Act
- ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❏ 153 Recovery of Overpayment of Veteran's Benefits
- ❏ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ❏ 195 Contract Product Liability
- ❏ 196 Franchise

### REAL PROPERTY
- ❏ 210 Land Condemnation
- ❏ 220 Foreclosure
- ❏ 230 Rent Lease & Ejectment
- ❏ 240 Torts to Land
- ❏ 245 Tort Product Liability
- ❏ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ❏ 310 Airplane
- ❏ 315 Airplane Product Liability
- ❏ 320 Assault, Libel & Slander
- ❏ 330 Federal Employers' Liability
- ❏ 340 Marine
- ❏ 345 Marine Product Liability
- ❏ 350 Motor Vehicle
- ❏ 355 Motor Vehicle Product Liability
- ❏ 360 Other Personal Injury
- ❏ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ❏ 365 Personal Injury - Product Liability
- ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❏ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ❏ 370 Other Fraud
- ❏ 371 Truth in Lending
- ❏ 380 Other Personal Property Damage
- ❏ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ❏ 440 Other Civil Rights
- ❏ 441 Voting
- ❏ 442 Employment
- ❏ 443 Housing/ Accommodations
- ❏ 445 Amer. w/Disabilities - Employment
- ❏ 446 Amer. w/Disabilities - Other
- ❏ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ❏ 463 Alien Detainee
- ❏ 510 Motions to Vacate Sentence
- ❏ 530 General
- ❏ 535 Death Penalty
**Other:**
- ❏ 540 Mandamus & Other
- ❏ 550 Civil Rights
- ❏ 555 Prison Condition
- ❏ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ❏ 625 Drug Related Seizure of Property 21 USC 881
- ❏ 690 Other

### LABOR
- ❏ 710 Fair Labor Standards Act
- ❏ 720 Labor/Management Relations
- ❏ 740 Railway Labor Act
- ❏ 751 Family and Medical Leave Act
- ❏ 790 Other Labor Litigation
- ❏ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ❏ 462 Naturalization Application
- ❏ 465 Other Immigration Actions

### BANKRUPTCY
- ❏ 422 Appeal 28 USC 158
- ❏ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ❏ 820 Copyrights
- ❏ 830 Patent
- ❏ 840 Trademark

### SOCIAL SECURITY
- ❏ 861 HIA (1395ff)
- ❏ 862 Black Lung (923)
- ❏ 863 DIWC/DIWW (405(g))
- ❏ 864 SSID Title XVI
- ❏ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ❏ 870 Taxes (U.S. Plaintiff or Defendant)
- ❏ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ❏ 375 False Claims Act
- ❏ 376 Qui Tam (31 USC 3729(a))
- ❏ 400 State Reapportionment
- ❏ 410 Antitrust
- ❏ 430 Banks and Banking
- ❏ 450 Commerce
- ❏ 460 Deportation
- ❏ 470 Racketeer Influenced and Corrupt Organizations
- ❏ 480 Consumer Credit
- ❏ 490 Cable/Sat TV
- ❏ 850 Securities/Commodities/ Exchange
- ❏ 890 Other Statutory Actions
- ❏ 891 Agricultural Acts
- ❏ 893 Environmental Matters
- ❏ 895 Freedom of Information Act
- ❏ 896 Arbitration
- ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❏ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of Express and Implied Warranty and violation of 73 Pa. Cons. Stat. § 201-1 et seq.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

JAN 24 2017

DATE _____    SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __2215 Graystone Lane, Newtown, Bucks County, Pennsylvania__

17   0339

Address of Defendant: __IKO Industries, Inc., 120 Hay Road, Wilmington, Delaware 19089__

Place of Accident, Incident or Transaction: __Newtown, Bucks County, PA__
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
      (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☑ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify)  Breach of Express and Implied Warranty

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, __Liberato P. Verderame,__ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: __1-24-17__        _____        80279
                              Attorney-at-Law        Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __1-24-17__        _____        80279        JAN 24 2017
                              Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)

**CDJ**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

FREDRICK & DANA LEEDS, SVEN & ELIZABETH BEAUCHMIN, .
Kishor & Hema Kannan Gandhi, and MICHAEL & SIMONA FABIANO,
on behalf of themselves and all others similarly situated          :
                        v.                                          :
IKO MANUFACTURING, INC., IKO  INDUSTRIES LTD.,                      :
IKO MIDWEST INC., IKO INDUSTRIES, INC.                              :
and IKO PRODUCTION, INC.

CIVIL ACTION

**17    0339**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          (xx)

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (  )

1-24-17
**Date**

**Attorney-at-law**

Plaintiffs
**Attorney for**

215-867-2399          267-685-0676          medelson@edelson-law.com

**Telephone**          **FAX Number**          **E-Mail Address**

(Civ. 660) 10/02

JAN 24 2017